OPINION
{¶ 1} This is an appeal by Appellant Maria Schmelzer from a jury verdict in the Fairfield County Court of Common Pleas in favor of Appellee, James Lesar, M.D.
 STATEMENT OF THE FACTS AND CASE {¶ 2} In October, 1990, Appellant Maria Schmelzer, who was suffering from head pain, eye pressure and dizziness, was referred to a neurologist by her family physician. Her family physician, Dr. Scoggins, diagnosed Appellant as suffering from migraine headaches but based on her symptoms he wanted to rule out that she may be suffering from something other than migraines.
 {¶ 3} Appellant underwent extensive testing including MRI's, CAT scans and a spinal tap, all of which were negative for multiple sclerosis (MS).
 {¶ 4} Appellant initially saw Dr. Ann Pakalnis, but in June, 1991, Dr. James Parker took over her care and treatment, and on June 18, 1991, he diagnosed Appellant with MS. Dr. Parker prescribed Cytoxan, an immunosuppressant drug, for Appellant as part of her treatment.
 {¶ 5} There is a recognized association between dosage of Cytoxan and increased risk of bladder cancer. (T. at 416, 420, 423, 463).
 {¶ 6} On December 21, 1992, Appellee Dr. James Lesar, a board certified internist, assumed Appellant's care from Dr. Parker. He also independently diagnosed Appellant with MS. He also continued to treat Appellant with Cytoxan through April, 1997, when she developed bladder cancer. Appellant was also prescribed Beterseron in July, 1994 and Methotrexate after April, 1997.
 {¶ 7} Appellant was under Appellee's care for seven (7) years. Throughout this time she continued to experience headaches and dizziness. (T. at 844). During this time Appellant also underwent more MRI testing which again came back with negative results. (T. at 845-853).
 {¶ 8} On September 21, 1991, upon referral by Appellee, Appellant saw Dr. Kottil Rammohan, another neurologist. She saw him again in November, 1999. Dr, Rammohan discontinued Appellant's MS medication and diagnosed her with migraine headaches and treated her with Maxalt and Depakote. Appellant responded immediately to said medications. (T. at 876-877). Within a few weeks she was able to increase her hours at work and was working full-time within a couple of months. (T. at 878).
 {¶ 9} Appellant filed a complaint against Appellee alleging that he improperly treated her for MS and as a result of his misdiagnosis and treatment she sustained bladder cancer and bone density loss of greater than 20%.
 {¶ 10} This matter was tried before a jury on January 21-28, 2003.
 {¶ 11} At trial, Appellant presented expert testimony as to standard of care from Dr. John Conomy, a neurologist at the Mellon Center at the Cleveland Clinic who examined Appellant's medical records. Appellant also presented testimony from Dr. William Bauer, another neurologist, who examined Appellant and confirmed that she did not have MS.
 {¶ 12} A physician pharmacologist, Dr. Thompson, also testified on behalf of Appellant as to the effects of the prescribed drugs on Appellant's health.
 {¶ 13} Additionally, Appellant presented a psychological expert in support of her claim for emotional damage as well as an economic expert in support of her loss income and other economic damages. (T. at 675-721, 747-750).
 {¶ 14} Appellee called two doctors to testify as experts: Dr. Anthony, a neurologist who first trained in internal medicine, and Dr. Yaffee, an internist.
 {¶ 15} Ultimately, the jury returned a defense verdict.
 {¶ 16} It is from this verdict Appellant appeals, assigning the following sole error for review:
 ASSIGNMENTS OF ERROR {¶ 17} "I. The trial court abused its discretion and committed reversible error by permitting defendant/appellant to present cumulative expert testimony.
 {¶ 18} "II. The trial court abused its discretion and committed reversible error by restricting plaintiff/appellants' redirect examination on the critical isse in dispute after defendant/appellee opened the door during cross-examination."
 I. {¶ 19} In her first assignment of error, appellant asserts that the trial court erred by permitting cumulative evidence. We disagree.
 {¶ 20} Appellant argues that the trial court should have exercised its discretion under Evid.R. 403(B) to limit the defendant's ability to present the same evidence in a repetitive fashion.
 {¶ 21} Evid.R. 403(B) provides as follows:
 {¶ 22} "(B) Exclusion discretionary. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence.
 {¶ 23} "Evid.R. 403(B) does not require exclusion of cumulative evidence. The court has discretion to admit or exclude it." State v. Campbell (1994), 69 Ohio St.3d 38, 51,630 N.E.2d 339, 352.
 {¶ 24} Appellee asserts that its two expert witnesses did not present cumulative testimony. Instead, each witness presented unique testimony: (1) Dr. Anthony, the neurologist, testified as to neurological issues in response to the testimony of Appellant's expert, Dr. Conomy; (2) Dr. Yaffee, the internist, testified about the long term effect of steroids, osteoporosis, kidney disease and diabetes. His testimony was provided in response to Appellant's pharmacology expert, Dr. Thompson. Additionally, he did give his opinion as to standard of care as to the diagnosis of MS as well as the prescribed drug treatment.
 {¶ 25} We note that the admissibility of evidence is left to the sound discretion of the trial court. Thus, absent an abuse of discretion, a reviewing court must not reverse the trial court's decision. State v. Combs (1991), 62 Ohio St.3d 278,581 N.E.2d 1071; State v. Sage (1987), 31 Ohio St.3d 173, 510 N.E.2d 343. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. In re Jane Doe 1 (1991), 57 Ohio St.3d 135,566 N.E.2d 1181.
 {¶ 26} In the case sub judice, we find no error with the trial court's decision to permit both of Appellee's expert witnesses to testify. The witnesses' testimony was not a mere recitation of each other's expert opinion. Rather, each witness conveyed to the trier of fact particular and useful information to help understand the nature of Appellant's diagnosis and treatment.
 {¶ 27} We find no abuse of discretion on the part of the trial court in allowing Appellee to present the testimony both of these expert witnesses.
 {¶ 28} Appellant's first assignment of error is overruled.
 II. {¶ 29} In her second assignment of error, Appellant challenges the trial court's restriction on the redirect examination of Appellant's expert, Dr. Thompson. Appellant argues that Appellee "opened the door" to the questions and therefore the court abused its discretion by excluding such line of questioning. We disagree.
 {¶ 30} Prior to his testifying, the trial court limited the scope of Dr. Thompson's testimony based on the fact that 50% or more of his medical practice is not devoted to active clinical practice.
 {¶ 31} Evid. R. 601(D) provides:
 {¶ 32} "Every person is competent to be a witness except * * *
 {¶ 33} "(D) A person giving expert testimony on the issue of liability in any claim asserted in any civil action against a physician, * * * arising out of the diagnosis, care, or treatment of any person by physician * * * unless the person testifying is licensed to practice medicine and surgery * * * by the state medical board or by the licensing authority of the state, and unless the person devotes at least one-half of his or her professional time to the active clinical practice in his or her field of licensure * * *."
 {¶ 34} When determining whether a particular expert meets this competency requirement, courts are generally guided by the purpose behind the competency statute as defined by the Supreme Court of Ohio. In McCrory v. State (1989), 67 Ohio St.2d 99, the Ohio Supreme Court stated:
 {¶ 35} "Nowhere in the statute is the phrase `active clinical practice' defined. Dictionary definitions of phrases such as `clinical' and `clinical medicine' point to patient care as a basic requirement and further suggest bedside care. Hence, we conclude the statute deals with the basic unfairness of permitting the pointing of accusatory fingers by those who do not take care of the sick toward those who do. More specifically, we conclude that the purpose of the statute is to preclude testimony by the physician who earns a living or spends much of his time testifying against his fellows as a professional witness, and to prevent those whose lack of experiential background in the very field they seek to judge, the clinical practitioner, makes the validity of their opinions suspect, from expressing those opinions for pay or otherwise. Accordingly, the essential inquiry for determining if a medical expert meets the competency requirements of Evid. R. 601(D) is to determine whether the witness has "acquired that special experience or experiential background in the field he seeks to judge," Crosswhite v. Desai
(1989), 64 Ohio App.3d 170, 174, or whether the person is a "hired gun" or a "professional expert" who lacks any clinical experience."
 {¶ 36} Appellant is not challenging the trial court's decision finding that Dr. Thompson was not qualified to testify as to whether Appellant did not did not have MS, but is instead arguing that once Appellee asked Dr. Thompson the following questions, that Appellee "opened the door" and therefore Appellant should have then been allowed to proceed with a line of questioning relative to the diagnosis of multiple sclerosis.
 {¶ 37} "Q: You believe Maria has cluster headaches, don't you?
 {¶ 38} "A: Yes, sir." (T. at 488).
 {¶ 39} At that time, counsel for Appellant objected, stating that such questioning was beyond the scope of direct. The trial court overruled such objection, correctly holding that cross-examination is not limited to the scope of direct.
 {¶ 40} Upon redirect, Appellant, arguing that Appellee opened the door via the above questioning, asked the following:
 {¶ 41} "Q: Do you believe Maria Schmelzer has multiple sclerosis?
 {¶ 42} "A: Absolutely not.
 {¶ 43} "Q: Now —" (T. at 509).
 {¶ 44} At this time Appellee moved to strike and the court granted same.
 {¶ 45} As a general rule, the scope of redirect examination is limited to matters inquired into by the adverse party on cross-examination. State v. Wilson (1972), 30 Ohio St.2d 199,204, 283 N.E.2d 632. "The control of redirect examination is committed to the discretion of the trial judge and a reversal upon that ground can be predicated upon nothing less than a clear abuse thereof." Id. An abuse of discretion connotes more than a mere error of law or judgment, instead requiring a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 46} Upon review, we find that the trial court did not abuse its discretion by refusing to permit Appellant's questioning concerning MS during redirect examination. The trial court had already determined that Dr. Thompson was not qualified to testify as to a diagnosis of MS based on his area of expertise and because he had only reviewed Appellant's pharmacology related records and had not examined Appellant, (T. at 510-512).
 {¶ 47} While we find that trial court should not have allowed the question asked by Appellee's counsel as to Dr. Thompson's opinion that Appellant suffered from cluster headaches based on the trial court's prior determination that Dr. Thompson was not qualified to testify as to such, we find that the allowance of such question was in no way prejudicial to Appellant. Furthermore, to have allowed Appellant to elicit opinion testimony as to standard of care on the issue of MS in addition to the cluster headache opinion would have only compounded such error.
 {¶ 48} We further find that a line of questioning as to multiple sclerosis was beyond the scope of cross-examination and the court did not abuse its discretion by restricting the scope of redirect examination. State v. Faulkner (1978),56 Ohio St.2d 42, 46, 381 N.E.2d 934.
 {¶ 49} Appellant's second assignment of error is overruled.
 {¶ 50} The decision of the Fairfield County Common Pleas Court is affirmed.
Boggins, J. and Wise, J., concur.
Hoffman, P.J., concurs separately